IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CASSANDRA LYNN STOKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-24-456-GLJ |
| ) | |
| FRANK BISIGNANO,[1] ) | |
| Acting Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

# OPINION AND ORDER

Claimant Cassandra Lynn Stoker requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he

---

[1] On May 7, 2025, Frank Bisignano became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Mr. Bisignano is substituted for Martin O'Malley as the Defendant in this action.

is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality

---

[2] Step one requires Claimant to establish that she is not engaged in substantial gainful activity. Step two requires Claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If Claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where Claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that Claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if Claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-751 (10th Cir. 1988).

of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-801.

**Claimant's Background**

Claimant was thirty-five years old at the time of the administrative hearing. (Tr. 38, 262). She completed tenth grade and has worked as a fast food worker. (Tr. 46, 310). Claimant alleges that she has been unable to work since December 31, 2015, due to post-traumatic stress disorder ("PTSD"), bipolar disorder, obesity, anxiety, depression, right shoulder pain, and high blood pressure. (Tr. 309).

**Procedural History**

On December 1, 2021, Claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Cindy Martin conducted an administrative hearing and determined that Claimant was not disabled in a written opinion dated March 20, 2024. (Tr. 17-31). The Appeals Council denied review, so the ALJ's opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made her decision at step five of the sequential evaluation. At step two, she found Claimant had the severe impairments of asthma, right shoulder scapula dyskinesis, carpal tunnel of the right wrist, slight levocurvature of the thoracic spine, obesity, depressive disorder, anxiety disorder, and PTSD, as well as the nonsevere

impairments of high blood pressure and high cholesterol, gallstones, gastritis, small hiatal hernia, hepatic stenosis, and acid reflux. (Tr. 20). She determined Claimant did not meet a Listing at step three, including Listings 1.15, 1.16, and 1.18. At step four, she found that Claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that she could only occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl, and have no more than occasional exposure to concentrated dust, odors, gases and poor ventilation; frequently reach, handle, finger, and feel with the dominant right upper extremity; and never climb ladders/ropes/scaffolds. Additionally, the ALJ found Claimant could understand, remember, and carry out simple and detailed tasks but not complex tasks, and that she could not work at a production rate pace but could perform end of day goals; could adapt to occasional changes in work processes and environment, and only occasionally interact with coworkers, supervisors, and the general public. (Tr. 23-24). As a result, the ALJ determined Claimant could not return to her past relevant work, but that she was nevertheless not disabled because there was work in the economy that she could perform, *i.e.*, laundry sorter, routing clerk, inspector and hand packager, semiconductor bonder, touchup screener, and clerical sorter. (Tr. 29-31).

## Review

Claimant contends the ALJ erred by (i) failing to properly evaluate the medical opinions related to Claimant's mental impairments, and (ii) failing to properly evaluate her subjective statements. The Court finds these arguments unpersuasive.

The evidence related to the issues on appeal reflects that Claimant had general diagnoses of depression, anxiety, and/or PTSD at least as far back as 2019, but that it was treated by primary care physicians, generally only with medication. (Tr., *e.g.*, 425, 466, 484, 529, 543, 811-812, 955). The record contained no treatment by mental health professionals. Treatment notes after the 2021 alleged onset date indicate normal mood and affect, behavior, judgment, and thought content. (Tr., *e.g.*, 567, 570, 829-838, 877).

For an earlier evaluation period, Dr. Kathleen Ward, Ph.D., a psychologist, conducted a mental status evaluation of Claimant on December 20, 2017. At that time, Claimant reported having bipolar disorder, and she presented in mismatched clothing, with speech/syntax that was difficult to follow, limited and/or intermittent eye contact, and a body odor that lingered after Claimant left the room. Dr. Ward found Claimant's presentation to be flat and not inconsistent with the autism spectrum although there were no records to support this diagnosis. (Tr. 422). She appeared to have limited deficits in social judgment and problem solving. (Tr. 422-423). Dr. Ward described Claimant as an unreliable historian, with some evidence she may be incompetent to handle any funds awarded. Claimant's fund of knowledge was low, and her thought processes were literal, vague, and contradictory, and she did not appear to be malingering. Dr. Ward recommended an intellectual functioning assessment, and ultimately assessed Claimant with rule out mild intellectual disability v. borderline intellectual functioning, major depressive disorder recurrent moderate to severe (v. bipolar disorder), PTSD, and unspecified substance abuse history.

On May 9, 2022, Dr. Ray Edwards, MHR, LPC, conducted a mental status examination of Claimant. (Tr. 587-589). He assessed Claimant with major depressive disorder recurrent moderate to severe, generalized anxiety disorder, and PTSD unspecified, and opined that her prognosis was guarded given the severity of her symptoms. (Tr. 589). He described her as "slightly tense" with "salient markers of anxiety and depression," noting she had difficulty with her own history. (Tr. 589). As to her mental status, he found as relevant that she had a flat affect and appeared sad and irritable, but was attentive and casually groomed despite appearing anxious. Dr. Edwards described pressured speech, with a lisp and a stutter, noting that language skills are a challenge for her. As for signs of moderate depression, he stated she appeared sad and downcast, and body posture and attitude conveyed an underlying depressed mood. He further stated that her speech and thinking appeared slowed by depressed mood. Additionally, he found she had fair judgment and insight, but that she had signs of anxiety including restlessness, fidgeting, and being distracted easily. (Tr. 589).

Prior to the date last insured, state reviewing physicians determined in previous applications that Claimant's mental impairment(s) appeared non-severe. (Tr. 91-92). After the date last insured, state reviewing physicians determined initially and upon reconsideration that Claimant had moderate limitations in the ability to understand and remember detailed instructions, carry out detailed instructions, and interact appropriately with the general public. The reviewers determined Claimant could understand, recall, and perform simple and detailed tasks, but not complex tasks, and make occasional related judgments. Additionally, she found Claimant could attend to and complete more than basic

tasks, including tasks that require some skills and judgment, but that do not require doing complex work duties involving in-depth multilayer decision-making or supervisory tasks, or performing tasks that require facts, figures, or abstract ideas at a high level of complexity, the health or safety of other, or fiduciary responsibilities.  The physicians further found Claimant could concentrate and focus for two-hour periods with routine breaks, and pace and persist for eight-hour workdays and forty-hour work weeks despite her psychological symptoms, but that her periodic uncontrolled symptoms would cause difficulty with maintaining concentration for complex tasks and would experience lapses on tasks that require sustained attention.  While she could interact with supervisors and co-workers to learn tasks and accept criticism, she could only tolerate occasional/incidental public contact, and she could adapt to a work setting and some changes within the work setting. (Tr. 102, 130).

At the administrative hearing, Claimant testified that she is prevented from working by both physical and mental impairments, stating that she was prescribed mental health medication by a psychiatrist, but was not in counseling. (Tr. 48-49).  As to her memory, she testified that she had blocked certain things out from her childhood, mostly bad memories, and also had trouble with concentration and focus. (Tr. 49-50).  She testified that generally she only left the house for groceries and to pay bills. (Tr. 50-51).  Part of the reason for that is that she is not good in crowds, which causes panic attacks. (Tr. 51-52).  She described discovering that her family was asking her to use her food stamps for their food. (Tr. 61-62).  She further testified that she did not interact with friends and mostly stayed home with her significant other. (Tr. 62).  She stated that anxiety,

depression, and her childhood traumas kept her from doing household chores as well. (Tr. 63-64).

In her written opinion at step four, the ALJ summarized Claimant's hearing testimony, as well as the evidence in the record. As to her mental impairments, the ALJ noted her history of mental health medication, and her reports of mental health treatment to Dr. Edward. She then summarized Dr. Edward's findings, noting they were "somewhat contradictory" because (1) he noted Claimant had difficulty remembering past events, demonstrated slowed thinking, and presented as "child-like," but estimated her intelligence to be above average with intact associations, logical thinking, and appropriate thought content, (2) he described her speech as pressured but also slowed, and (3) he observed she was easily distracted but also said she was attentive. (Tr. 27). The ALJ contrasted this report with the treatment/minimal mental status examinations that were unremarkable and largely normal, as well as her lack of mental health treatment. The ALJ then noted the guidelines for evaluating medical opinions in 20 C.F.R. §§ 404.1520c(a) and 416.920c(a). The ALJ found the state reviewing physician opinions mostly persuasive and supported by the evidence cited, as well as consistent with the evidence as a whole that was largely limited to medication in lieu of mental health treatment, and involved no hospitalization or ER treatment, the somewhat contradictory report from Dr. Edwards, and the other observations of normal mental statuses. Additionally, the ALJ noted Dr. Ward's opinion and that the findings were considered in the RFC, but that it predated the alleged onset date by four years and contained no specific work-related functional limitations. (Tr. 27-29).

**RFC Assessment.** Claimant argues that the ALJ failed to properly assess her RFC, including the medical opinions of the state reviewing physicians and the consultative opinions of both Dr. Ward and Dr. Edwards. "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations)." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "[I]t is incumbent on the ALJ to comply with SSR 96-8p by providing a narrative explanation for his RFC finding that plaintiff can perform [the] work, citing to specific medical facts and/or nonmedical evidence in support of his RFC findings." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *5 (D. Kan. Sept. 11, 2013). Furthermore, for claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c and 416.920c. Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical findings by considering a list of factors. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors are: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c),

416.920c(c).  Supportability and consistency are the most important factors in evaluating the persuasiveness of a medical opinion and the ALJ must explain how both factors were considered.  *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  Generally, the ALJ is not required to explain how the other factors were considered.  *Id.*   However, when the ALJ finds that two or more medical opinions or prior administrative findings on the same issue are equally well-supported and consistent with the record but are not exactly the same, the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The supportability factor examines how well a medical source supported their own opinion with "objective medical evidence" and "supporting explanations."  20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  The consistency factor calls for a comparison between the medical opinion and "the evidence from other medical sources and nonmedical sources" in the record.  20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

Here, the ALJ stated that the state reviewing physician opinions as to these applications were "mostly persuasive," although the RFC was worded differently than in the ALJ's opinion, and that the opinions were "supported by the evidence the examiners cited." (Tr. 29).  Both assessments contained the same summary of the reports from Dr. Ward and Dr. Edwards.  (Tr. 98, 126).  The ALJ correctly noted that neither Dr. Edwards's nor Dr. Ward's opinions contained work-related functional assessments, but that she had nevertheless considered them in the assessment.  (Tr. 29).  She did not, however, assess either opinion for the factors under 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

Both state reviewing physician mental RFC assessments found, as to Claimant's mental impairments, that she would have difficulty maintaining concentration for complex tasks and will experience some lapses on some tasks that require sustained attention, but that she could interact with co-workers and supervisors to learn tasks and accept criticism, could only tolerate incidental/occasional public contact, and could adapt to a work setting and changes in the work setting. (Tr. 102, 130). In turn, the ALJ found Claimant could understand, remember, and carry out simple and detailed tasks but not complex tasks, adapt to occasional changes in work processes and environment, could not work at a production rate pace but could perform end-of-day goals, and could tolerate occasional interaction with co-workers, supervisors, and the general public. (Tr. 24).

Claimant contends the state reviewing physicians failed to explain how: (i) Claimant could accept instructions and criticism on a regular and continuing basis given her reported firing from her last job after numerous write-ups, (ii) Claimant could work with co-workers sufficiently given her strange behavior and reported hygiene issues, (iii) Claimant could persist for up to eight hours per day given fluctuations in concentration and potential learning or memory problems, and (iv) the varying assessments of Claimant between Ward and Edwards that were not resolved. She further contends that these failures, particularly as to Dr. Ward's opinion, left the court with a conclusion without evidence. Finally, she contends that the ALJ's failure to explain how her specific findings applied to Claimant's anxiety and PTSD and properly accommodated them. Claimant does not, however, point to any substantial or functional differences between the ALJ's assessed RFC and the suggested mental RFCs provided by the state reviewing physicians.

Under the revised regulations, a medical opinion is defined as "a statement from a medical source about what [the claimant] can still do despite [his] impairment(s) and whether [the claimant has] one or more impairment-related limitations or restrictions" in work-related functional abilities. 20 C.F.R. § 404.1513(a)(2). Work-related functional limitations go to a Claimant's ability to perform the physical and/or mental demands of work activities. For mental work-related limitations, this includes maintaining concentration, persistence, or pace, carrying out instructions, and remembering. *Id.* The regulations do not, however, expressly require the ALJ to evaluate "other medical evidence," including medical signs, laboratory findings, clinical findings, diagnoses, and prognoses pursuant to the 20 C.F.R. § 404.1520c(c) factors. *Id.* §§ 404.1520(b), 416.913(a)(3). *Warren E. H. v. Kijakazi*, 2023 WL 7385776, at *2 (E.D. Okla. Nov. 8, 2023). Accordingly, there was no reversible error in evaluating the persuasiveness of the opinions of Dr. Ward and Dr. Edwards, as they offered no work-related functional limitations.

Claimant nevertheless contends that the ALJ erred in evaluating the state reviewing physician opinions because they cited the reports of Dr. Ward and Dr. Edwards, and she contends their reports support further limitations than those assigned by the state reviewing physicians. Claimant focuses on two specific RFC findings, that Claimant could (1) have occasional interaction (up to one third of a work day) with co-workers, supervisors, and the general public, and (2) persist at carrying out detailed instructions. As to the first, Claimant contends there is no evidence she can accept instructions and criticism, or work with coworkers long enough to learn a job, given her work history of being fired after 18

write-ups, as well as her behavioral, speech, and hygiene problems. Notably, although Dr. Ward (prior to the alleged onset date) noted a significant hygiene problem Dr. Edwards (after the alleged onset date) specifically noted she was casually groomed, and made no mention of an odor although she reported needing prompts for hygiene. As to the second, she contends she cannot persist at carrying out detailed instructions for eight-hour workdays given Dr. Ward thought she might have a learning disability and Dr. Edwards, despite finding she had an above average IQ, described Claimant as having difficulty with long-term memory. Accordingly, she contends the ALJ erred in failing to resolve these issues, because the state reviewing physicians, and thereby the ALJ, had no evidence to support their conclusions for these RFC findings.

What Claimant ignores, but the ALJ did not, is that the only report providing support for such significant deficits related to Claimant is Dr. Ward's, which took place years before the alleged onset date, and some of Dr. Edward's findings, which are contradictory. Treatment records contain no reference to sustained mental health treatment other than medication and further contain consistent findings of normal mood and affect, behavior, judgment, and thought content. Many of the records as to Claimant's alleged deficits are from her own reports, and not necessarily borne out by the medical findings (see below for further discussion of Claimant's subjective symptoms). And while it might be preferable for the record to have a mental RFC assessment following an in-person evaluation in the record, only the state reviewing physicians provided a comprehensive mental RFC evaluation for the record.

Contrary to Claimant's arguments, the ALJ discussed all the evidence in the record, including the objective findings and the evidence related to Claimant's work history, and the ALJ's reasons for reaching the RFC. *Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'") (quoting *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)). The evidence does not reflect that Claimant had further limitations than those posed in the RFC. And the ALJ clearly considered the findings within both Dr. Ward and Dr. Edwards's reports while Claimant pointed to no *medical documentation* providing further limitations. Because she points to no evidence other than her own assertions, the Court declines to find an error here. *Cf. Garcia v. Astrue*, 2012 WL 4754919, at *8 (W.D. Okla. Aug. 29, 2012) ("Plaintiff's mere suggestion that a 'slow' gait might adversely affect his ability to perform the standing and walking requirements of light work is not supported by any authority."). When all the evidence is taken into account, the conclusion that Claimant could perform the RFC stated above is well supported by substantial evidence. The Court finds no error in the ALJ's failure to include any additional limitations as to Claimant's RFC. *See, e. g., Best-Willie v. Colvin*, 514 Fed. Appx. 728, 737 (10th Cir. 2013) ("Having reasonably discounted the opinions of Drs. Hall and Charlat, the ALJ did not err in failing to include additional limitations in her RFC assessment.").

**Subjective Statements.**  Turning to the ALJ's assessment of Claimant's subjective statements at step four, the Court recognizes that the Commissioner uses a two-step process to evaluate a claimant's subjective statements of impairments, limitations, and pain:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain.  Second . . . we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . .

Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *3 (October 25, 2017).[3]  Tenth Circuit precedent is in alignment with the Commissioner's regulations but characterizes the evaluation as a three-part test.  *See e. g., Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1166-1167 (10th Cir. 2012) (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)).[4]  As part of the symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any

---

[3]  SSR 16-3p is applicable for decisions on or after March 28, 2016, and superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996).  *See* SSR 16-3p, 2017 WL 5180304, at *1.  SSR 16-3p eliminated the use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of [a claimant's] character." *Id.*  at *2.

[4]  Analyses under SSR 16-3p and *Luna* are substantially similar and require the ALJ to consider the degree to which a claimant's subjective symptoms are consistent with the evidence.  *See, e. g., Paulek v. Colvin*, 662 Fed. Appx. 588, 593-594 (10th Cir. 2016) (finding SSR 16-3p "comports" with *Luna)* and *Brownrigg v. Berryhill,* 688 Fed. Appx. 542, 545-546 (10th Cir. 2017) (finding the factors to consider in evaluating intensity, persistence, and limiting effects of a claimant's symptoms in 16-3p are similar to those set forth in *Luna*).  The Cout agrees that Tenth Circuit credibility analysis decisions remain precedential in symptom analyses pursuant to SSR 16-3p.

other measures the claimant uses or has used to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *See* Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *7-8. An ALJ's symptom evaluation is entitled to deference unless the Court finds that the ALJ misread the medical evidence as a whole. *See Casias,* 933 F.2d at 801. An ALJ's findings regarding a claimant's symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. The ALJ is not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but simply "recit[ing] the factors" is insufficient. *See* Soc. Sec. Rul. 16-3p, 2017 WL 5180304 at *10.

Under 20 C.F.R. § 404.1529, and as restated in Soc. Sec. Rul. 16-3p, "we will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." 2017 WL 5180304, at *5. As outlined above, however, the Court finds that the ALJ set out the appropriate analysis and cited evidence supporting her reasons for finding Claimant's subjective complaints were not believable to the extent alleged at step four, *i.e.*, she gave clear and specific reasons that were specifically linked to the evidence in the record. Claimant's true argument here is that the ALJ failed to develop the record by failing to obtain records from Claimant's psychiatrist, Dr. Michale Collins, that might bolster her testimony.

The ALJ has an affirmative duty to fully and fairly develop the record as to any impairment suggested by the evidence. *See Hawkins,* 113 F.3d at 1164; *Henrie v. United*

-16-

*States Department of Health & Human Services*, 13 F.3d 359, 360-361 (10th Cir. 1993). This duty exists even when a claimant is represented by counsel. *Baca v. Dept. of Health & Human Services*, 5 F.3d 476, 480 (10th Cir. 1993). The court, however, is not required to act as a claimant's advocate, *Henrie*, 13 F.3d at 361, and an ALJ need not "exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning." *Hawkins*, 113 F.3d at 1168. Rather, she must use reasonable good judgment to ensure that the record fully and fairly addresses material issues. *See id.*

The duty to develop is "trigger[ed] only when the record suggests that a claimant suffers from a disorder yet lacks '[]sufficient medical evidence to evaluate the disorder and its effects on the claimant's ability to work' . . . ." *Elledge*, 2023 WL 1098158, at *3 (quoting *Jones v. Chater*, 110 F.3d 73, at *2 (10th Cir. Apr. 2, 1997)). In this case, Claimant at the administrative level "did not bring [Dr. Collins] to the attention of the ALJ." *Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008). Dr. Collins is listed in Claimant's application(s) as a physician who prescribed certain medications, and Claimant testified at the hearing that she saw a psychiatrist. Additionally, the records from Stigler Health & Wellness Center identify Dr. Collins as part of Claimant's care team, although the numerous records from this facility are largely signed by various nurse practitioners, and none are signed by Dr. Collins. When the ALJ asked counsel at the hearing regarding additional records for submission, counsel only identified outstanding records related to Claimant's back and right shoulder injury. The ALJ agreed to hold the record open for thirty days. (Tr. 76-80). "Although the ALJ has the duty to develop the record, such a duty does not permit a claimant, through counsel, to rest on the record—indeed, to exhort

-17-

the ALJ that the case is ready for decision—and later fault the ALJ for not performing a more exhaustive investigation." *Maes*, 522 F.3d at 1097. "This is especially true where, as here, neither counsel nor the claimant have obtained (or, so far as we can tell, tried to obtain) for themselves the records about which they now complain—suggesting that counsel has abandoned h[er] role as advocate in favor of relegating that responsibility to the ALJ." *Id.* ("This is particularly the case when the missing medical records are not obvious from the administrative record or otherwise brought to the attention of the ALJ."). Unlike in *Maes*, here there was additional evidence related to Claimant's mental health in the form of two consultative examinations, providing sufficient evidence for the ALJ to make a determination as to Claimant's impairments, including alleged severity, effects on ability to work, and the ultimate determination of disability. The ALJ thus did not improperly discount Claimant's subjective statements without fully developing the record; instead, she crafted an RFC that accounted for her statements *and* the findings in the record, taking into consideration the requisite factors.

There is no indication here that the ALJ misread Claimant's medical evidence taken as a whole, and her evaluation is entitled to deference. *See Casias*, 933 F.2d at 801. The essence of Claimant's appeal is that the Court should reweigh the evidence and reach a different result, which the Court simply may not do. *See, e. g., Casias*, 933 F.2d at 800. Because the ALJ's decision is "reasonably discerned," the Court declines to remand. *Garland v. Ming Dai*, 593 U.S. 357, 369 (2021) (An agency is not required to "follow a particular formula or incant 'magic words' like 'incredible' or 'rebutted' to overcome [a] presumption of credibility on appeal. To the contrary, a reviewing court must 'uphold'

even 'a decision of less than ideal clarity if the agency's path may reasonably be discerned.' So long as the [Agency's] reasons for rejecting [a person's] credibility are reasonably discernible, the agency must be understood as having rebutted the presumption of credibility. It need not use any particular words to do so. And, once more, a reviewing court must uphold that decision unless a reasonable adjudicator would have been compelled to reach a different conclusion.") (quoting, inter alia, *Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 286 (1974)).

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 15th day of January, 2026.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**